## PEERLESS STONE COMPANY *v.* WRAY.

[No. 18,418.   Filed Oct. 11, 1898.   Rehearing denied Dec. 30, 1898.]

MASTER AND SERVANT. — *Negligence.* — *Contributory Negligence.* — *Complaint.*—A complaint in an action for damages for injuries sustained by plaintiff while engaged in defendant's stone quarry alleged that a large bank of clay, of original deposit and stone, about seven feet in length and eight feet high, and one foot wide, and, weighing about five tons, that had been loosened by the removal of stone, and left unsupported, fell upon plaintiff; that the bank was of a brownish color, and appeared to plaintiff to be a ledge of stone, and the fact that it was a bank of clay was wholly unknown to plaintiff; that banks of clay were unusual in said quarry; that plaintiff when injured was in the line of his duty in the service of defendant, and had no knowledge that the bank had been loosened and left unsupported and was in danger of falling; that plaintiff in no way contributed to his injuries; that defendant well knew that the bank was not a ledge of stone, but a bank of clay and stone, loose and unsupported, and was in danger of falling, and carelessly and negligently failed to notify plaintiff thereof, although defendant well knew that the duties of plaintiff required him to pass beneath and close to said bank; that the superintendent of the quarry was above and near said bank, and saw that it was a mud seam, and had been loosened and was liable to slide down at any time. *Held*, that, as against demurrer, the complaint alleged facts sufficient to show negligence of defendant causing the injury, and freedom from contributory negligence on the part of plaintiff. *pp. 28, 29.*

LIMITATION OF ACTIONS.—*Amended Complaint.*—An amended complaint which does not introduce a new cause of action has reference to the time of the filing of the original complaint, and a plea of the statute of limitations will be determined with reference to the date when the action was originally commenced. *p. 30.*

INTERROGATORIES TO JURY.—*When Not in Conflict with General Verdict.*—*Master and Servant.*—Answers to interrogatories in an action for damages on account of injuries sustained by plaintiff while at work in defendant's stone quarry by reason of a bank of clay falling upon him, that plaintiff had worked in the quarry for over a year and knew that mud seams and dry seams were usual in the quarry; that he received no specific command on the day of the injury to go to the place where he was at work when injured; that at the time he went beneath the embankment. and before it fell upon him, he examined the embankment with the eye and was prevented

by sand and mineral deposit from seeing the exact character of the mud bank are not in irreconcilable conflict with a general verdict for plaintiff. *pp. 30-32.*

From the Monroe Circuit Court. *Affirmed.*

*M. F. Dunn,* for appellant.

*J. H. Louden, T. J. Louden* and *J. R. East,* for appellees.

HOWARD, J.—This is the third appeal in this case. *Peerless Stone Co.* v. *Wray,* 10 Ind. App. 324, and 143 Ind. 574. The judgment in favor of appellee was reversed on each of the former appeals, by reason of the insufficiency of the complaint.

The record before us shows that an amended complaint, in two paragraphs, was filed by appellee on March 31, 1897. It is alleged in the first paragraph of this complaint that on June 8, 1892, appellee and other employes were engaged at work in appellant's stone quarry, near Bedford, in Lawrence county, and that while appellee was then and there engaged in his duties "A large bank of clay dirt, of original deposit, and stone, about seven feet in length and eight feet high and one foot wide, and weighing about five tons, that had been loosened by the removal of stone and left unsupported, fell on, upon and against said plaintiff with great force and weight, and bruised and crushed said plaintiff to the ground and broke several bones in his body and cut and bruised him so that said plaintiff was unable to move, and was completely disabled and permanently injured; that said bank, where said plaintiff and other employes of said defendant were at work, was of a brownish gray color, and appeared to said employes to be a ledge of stone; that said plaintiff considered it a ledge of stone, and the same was not so exposed to ordinary view before it fell as to indicate anything else than a ledge of stone or a dry, and the fact that it was a bank of clay dirt and stone was wholly unknown to said plaintiff; that they were unusual in said quarry; that said plaintiff when so injured was in the line of his duty in

the service of the defendant, in performing the duties required of him by said defendant, and had no knowledge that said bank of clay dirt and stone had been loosened and left unsupported and was in danger of falling, and had no knowledge whatever that there was any danger in passing close to said bank of clay dirt and stone, but was in entire ignorance of the unsafe condition of said bank." General allegations are also made showing entire absence of fault on the part of appellee in causing his own injuries, and that he "in no way whatever contributed to the same."

It is further alleged: "That said defendant well knew that said bank was not a ledge of stone, but was a bank of clay dirt and stone, loose and unsupported, and was in danger of falling, but carelessly and negligently failed to notify said plaintiff or call his attention to the fact that said bank of clay dirt and stone was loose and unsupported, and was in danger of falling, or that there was danger in passing close to said bank of clay dirt and stone, although said defendant well knew that the duties of said plaintiff required him to pass beneath and close to said bank.   *   *   *   That the superintendent of the quarry was up on the bank, near said bank of clay dirt and stone, and saw that the same was a mud seam and had been loosened and was liable to slide down at any time. That said plaintiff by reason of said injuries   *   *   *   was totally disabled from manual labor during his natural life."

Counsel for appellee in contending that this complaint was good upon demurrer, as containing at least an imperfect statement of all that was necessary to be alleged to show negligence by appellant in causing the injuries sustained by appellee, and freedom from fault on his part in contributing to these injuries, yet admits that the complaint might, perhaps, have been "more specific in some particulars." With this view we are inclined to agree. There is a vagueness of statement as to some essential allegations that is quite objectionable; but the necessary facts are at least imperfectly, as

we think, set out. The faults indicated on the former appeal seem to have been corrected.

The chief objection now made to the complaint must, in our view, be held untenable. It is, that the action is shown to be barred by the statute of limitations. This objection is based on the circumstance that it appears that the amended complaint was filed more than two years after the cause of action accrued. There is nothing shown in the pleading itself, or in appellant's brief in relation thereto, that should take this case out of the general rule, namely, that an amended complaint, as well as an amendment to a complaint, if it does not introduce a new cause of action, has reference to the time of the filing of the original complaint. As stated by Judge Mitchell, in *Chicago, etc., R. Co.* v. *Bills*, 118 Ind. 221, "An amended complaint has relation ordinarily to the date of the commencement of the action, and is regarded as a matter occurring in the continuation or progress of the original cause. Unless, therefore, some new claim or title not previously asserted, is set up by way of amendment, a plea of the statute of limitations will be determined with reference to the date when the action was originally commenced." In the case at bar it is not contended that any cause of action is set up in the amended complaint different from that alleged in the original complaint.

There was a trial by a jury, resulting in a verdict and judgment in favor of appellee. Afterwards a new trial was granted, and the venue was changed from the regular judge to the special judge below. The second trial resulted also in a verdict and judgment in favor of appellee.

The next ruling of the court discussed in appellant's brief is the refusal to render judgment in favor of appellant on the answers of the jury to special interrogatories, notwithstanding the general verdict. In answer to appellant's interrogatories the jury found: That at the time of appellee's injury mud seams and dry seams were usual in appellant's quarry; that appellee had then worked in the quarry for over

a year; that the quarry covered about one-half an acre; that appellee received no specific command on the day of his injury to go to the place where he was at work; that at the time appellee went beneath the embankment, and before it fell upon him, he examined the embankment "with the eye;" that appellee was prevented by "sand and mineral deposit" from seeing the exact character of the mud bank; that he was aware of the fact that mud banks and seams were usual in appellant's quarry; that he could not discover at any distance from the bank that it was of clay; that he went beneath the bank without touching it; that he could not "by sight, by touch, by his hands, or by examination" discover why the bank was not solid stone or of an original deposit; that the stone which had supported the bank had been removed about five minutes before the bank fell upon appellee; and that appellee, as he approached the embankment and original deposit which fell upon him, could not have seen the character of the same had he looked and observed.

In answer to interrogatories submitted by appellee the jury found further:  That one Robert McKinley was appellant's superintendent, and in full charge of the quarry on the day of the accident; that the superintendent had one of his feet upon the upper edge of the bank of clay and dirt at the time it fell and injured appellee, and that by so standing on the bank he aided in causing it to fall upon appellee; that for two or three days prior to appellee's injury the superintendent knew that the bank was what was known as a mud seam, and could have known at this time that it would probably fall when the stone in front of it was removed; that said superintendent knew that said bank  without being propped was dangerous and unsafe to appellee long enough before appellee's injury to have warned him and prevented the same; and that there was no mud seam on the floor on which appellee was working except the one that fell upon him.

The general verdict of the jury was for the appellee and

against the appellant, and it seems very clear that there is nothing in the answers to the special interrogatories which is in irreconcilable conflict with this general verdict.

Counsel for appellant assumes many facts as found by the jury which the answers themselves fail to bear him out in. The rule is that the answers must be in irreconcilable conflict with the general verdict in order to justify the court in giving judgment upon the interrogatories against the verdict; but counsel would seem to argue as if the rule were that the answers must not be reconciled with the general verdict if it be possible to interpret them otherwise. In this case, however, even without resorting to the rule that all intendments are to be taken in favor of the general verdict, but taking the natural and ordinary meaning of the language used, there appears to be no conflict whatever between the answers to interrogatories and the general verdict of the jury. The answers themselves show that the judgment should be in favor of the appellee.

While mud seams and drys (the former dangerous, the latter harmless) were usual, that is, liable to be discovered in the quarry, yet it is found that there was no mud seam on the floor where appellee worked except the one that injured him. This he examined as he approached it, and it had all the appearance of solid rock being covered with a coat of sand and mineral matter, and he could not discover that it was anything different from the rest of the ledge. He was not required to make particular inspection with pick or other tool every time he approached the face of the stone wall. Obvious dangers, open to ordinary observation, he was bound to guard against, but not latent defects, to be discovered only on particular inspection. It is not to be expected that appellee should have received a specific command to go up to the face of the quarry every time he went there in the performance of his daily duties. It would be a dilatory workman who should wait for such specific orders every time he picked up a lot of tools or engaged in any other task required

by the duties of his employment. The superintendent, on the other hand, whose duty it was to make inspection and who knew the condition of the bank, was up above the bank long enough to have warned appellee of the danger; he there saw the character of this mud bank, which was wholly unknown to appellee. The jury find that the superintendent knew for two or three days before the accident that the bank was a mud seam, and not a part of the solid rock, and ought to have known that it was liable to slide down the moment the rock in front of it was removed; yet he placed his foot upon this treacherous mass a little before it came down, and thus aided in causing it to fall upon appellee.

In arguing that the evidence does not support the verdict, counsel for appellant indulges in extended verbal criticism. It is not, however, seriously contended that there was not evidence adduced to support the verdict, but, rather, that the preponderance of the evidence was in favor of the appellant. Indeed, counsel goes so far, notwithstanding the well settled practice in this jurisdiction, as to ask this court to weigh the evidence. "It was the duty of the lower court," says counsel, "after the jury had returned its verdict, to decide, by weighing the evidence, whether or not the preponderance of the evidence was with the plaintiff or with the defendant. If the court below—and courts below sometimes so do—failed legally, under the evidence now before this court in the bill of exceptions, to weigh the preponderance of evidence, will this court not weigh it?" The court below saw and heard the witnesses; and the law, in authorizing the granting of a new trial, concedes that the trial judge may determine whether the jury have failed properly to weigh the evidence or not. This court, however, has not had the opportunity of either hearing or seeing the witnesses, and can determine from the cold writing alone whether there was competent and sufficient evidence adduced to sustain the verdict returned by the jury. Having decided that ques-

tion our jurisdiction as to the evidence is exhausted. It is, besides, to be noted in this case that after the reversal of the former judgment by this court, the court below did grant a new trial at appellant's request, and also that there was a change of venue from the judge who presided at the first trial. There ought to be some end to litigation.

Some objection was made to comments by counsel for appellee upon certain evidence as to appellee's family. The evidence was admitted without objection; a part of it, indeed, being evidence introduced by appellant. The remarks of counsel were by way of recital and description, and were, in effect, withdrawn when objected to. We cannot conceive of any harm thereby done to appellant. The objection if any should have been made to the evidence itself. Judgment affirmed.